## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## (TAMPA DIVISION)

| | |
|---|---|
| **ALEXANDER JAMES COFFIN,**<br>an individual<br><br>409 W Davis Boulevard<br>Tampa, FL 33606<br><br>          Plaintiff,<br><br>v.<br><br>**NORTHROP GRUMMAN CORPORATION,**<br>a Delaware corporation,<br><br>2980 Fairview Park Drive<br>Falls Church, VA 22042<br><br>    Serve:<br>        CT Corporation<br>        1200 S. Pine Island Road<br>        Plantation, FL 33324<br>and<br><br>**NATALIE GREEN,**<br>A/K/A Natalja Jevrassova,<br>an individual,<br><br>4501 Samuel Way, Apartment 4135<br>Frisco, TX 75033<br><br>          Defendants. | Case No. _____ |

## COMPLAINT AND DEMAND FOR JURY TRIAL

1

Plaintiff Alexander James Coffin ("Plaintiff" or "Mr. Coffin"), proceeding *pro se*, files this Complaint against Defendants Northrop Grumman Corporation ("Northrop Grumman" or "the Company") and Natalie Green a/k/a Natalja Jevrassova ("Ms. Green"), and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for employment discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1991, based on Plaintiff's sex (male), race (Caucasian/White), and national origin (native-born American citizen). Plaintiff also asserts pendant state law claims against Defendant Natalie Green for defamation *per se*, tortious interference with advantageous business relations, and intentional infliction of emotional distress arising under Florida common law. These claims are based on a sustained and escalating pattern of discriminatory, harassing, and retaliatory conduct directed at Plaintiff by his direct supervisor, Ms. Green, which has damaged Plaintiff's professional reputation and career as both a corporate accountant and a licensed attorney. On May 6, 2026, following Plaintiff's EEOC filing and the issuance of a Notice of Right to Sue, Northrop

Grumman terminated Plaintiff's employment effective immediately, without advance warning, representing the culmination of the retaliatory and discriminatory campaign described herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 2000e-5(f)(3).

3. This Court has supplemental subject matter jurisdiction over Plaintiff's pendant Florida state law claims against Defendant Green pursuant to 28 U.S.C. § 1367(a), as those claims form part of the same case or controversy as Plaintiff's federal claims.

4. This Court has personal jurisdiction over Defendant Northrop Grumman Corporation, which maintains a place of business in Tampa, Florida, at 5401 W. Kennedy Boulevard, Suite 1000, Tampa, Florida 33609, and conducts substantial, continuous, and systematic business activities within this judicial district.

5. This Court has personal jurisdiction over Defendant Natalie Green, who, as Plaintiff's direct supervisor, regularly directed, supervised, and

communicated with Plaintiff in connection with his work performed from Tampa, Florida, thereby purposefully availing herself of the privilege of conducting activities within this district.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district, including but not limited to: Plaintiff performed his employment duties from his home office in Tampa, Florida; the discriminatory and retaliatory acts of Ms. Green were directed at and experienced by Plaintiff in Tampa, Florida; and Northrop Grumman maintains an office in Tampa, Florida.

## PARTIES

7. Plaintiff Alexander James Coffin, a member of the bar of this court, appears *pro se*. Plaintiff is an adult individual residing at 409 W. Davis Boulevard, Tampa, Florida 33606-3649. He holds a Bachelor of Science in Finance from the University of Maryland and a Juris Doctor from the George Washington University School of Law, where he was an honors graduate and Managing Editor of The George Washington Law Review. He is a member in good standing of the bar of twenty-four states, including Florida, and several

federal courts, including this Honorable Court. Plaintiff was employed by Northrop Grumman as a Property Accountant within the Corporate Sector, performing his duties remotely from his home office in Tampa, Florida. His employment was wrongfully terminated on May 6, 2026.

8. Defendant Northrop Grumman Corporation is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business and corporate headquarters at 2980 Fairview Park Drive, Falls Church, Virginia 22024. Northrop Grumman's registered agent is CT Corporation System, 1200 S. Pine Island Road, Plantation, Florida 33324. Northrop Grumman maintains an office in Tampa, Florida at 5401 W. Kennedy Boulevard, Suite 1000, Tampa, Florida 33609. Northrop Grumman is a large defense and technology company employing well in excess of 15 employees, and is an employer within the meaning of Title VII, 42 U.S.C. § 2000e(b), and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.02(7).

9. Defendant Natalie Green a/k/a Natalja Jevrassova is an individual who, upon information and belief, is a resident of the State of Texas. At all relevant times, Ms. Green has been employed by Northrop Grumman as

Plaintiff's direct supervisor. Ms. Green is sued in her individual capacity with respect to the pendant state law claims set forth herein.

## ADMINISTRATIVE PREREQUISITES AND TIMELINESS

10. On or about April 10, 2026, Plaintiff filed a Formal Charge of Discrimination and Retaliation with the Equal Employment Opportunity Commission ("EEOC"), Tampa Field Office (Inquiry/Case No. 511-2026-02515), and simultaneously submitted the same to the Miami District Office, charging Northrop Grumman Corporation with violations of Title VII and the Florida Civil Rights Act of 1992.

11. On April 21, 2026, the EEOC's Tampa Field Office issued a Notice of Right to Sue with respect to Plaintiff's EEOC Charge.

12. This Complaint is filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue. All administrative prerequisites to the filing of this action have been satisfied.

## STATEMENT OF FACTS

### A.    Background and Employment History

13. Plaintiff commenced employment with Northrop Grumman Corporation in 2014 as a Capital Administrative Analyst within the Company's Mission Systems Division in Baltimore, Maryland. During that period, Plaintiff's performance reviews were consistently excellent.

14. In April 2024, at the Company's request, and out of loyalty to Northrop Grumman, Plaintiff accepted a new position as a Property Accountant within the Corporate Sector, performing his duties remotely from his home office in Tampa, Florida. Plaintiff's work unit operates primarily from Los Angeles, California.

15. Plaintiff is a male, a Caucasian (White) American, and a native-born citizen of the United States. He is one of only two males in his work group and the only native-born American citizen. All or virtually all other members of the work group are female and/or non-American in national origin.

### B.    Defendant Natalie Green

16. Plaintiff's direct supervisor at all relevant times has been Defendant Natalie Green. Ms. Green is of Eastern European national origin. Ms. Green is

empowered by Northrop Grumman to direct and supervise Plaintiff's daily work, set his performance goals, evaluate his performance, place him on performance improvement plans, and take or recommend tangible employment actions affecting the terms and conditions of his employment.

17. Since Plaintiff's transfer to the Property Accountant role in April 2024, Ms. Green has subjected him to a sustained and escalating campaign of disparate treatment, hostility, belittlement, false accusations, and discriminatory conduct on account of his sex (male), race (Caucasian/White), and national origin (native-born American citizen). Ms. Green exhibits an intense animus against native-born white American males that pervades her management of Plaintiff.

## C. Specific Discriminatory, Harassing, and Retaliatory Acts

18. **False Accusation of Timesheet Fraud.** Ms. Green falsely and maliciously reported to Northrop Grumman that Plaintiff had submitted fabricated timesheets during a hurricane emergency. In fact, Plaintiff had been forced to evacuate his home and Tampa office due to life-threatening flooding and had worked remotely from a hotel room during the relevant period. No comparable investigation or accusation was directed at any other member

of the work group. Ms. Green made this false accusation knowing it was untrue, or with reckless disregard for its truth or falsity, with the intent and effect of damaging Plaintiff's professional reputation and subjecting him to adverse employment consequences.

19. **Negative Performance Evaluations Without Training.** Ms. Green provided Plaintiff with low job performance evaluations and openly criticized him, claiming he did not understand how to perform his job functions, despite the Company providing Plaintiff with no meaningful job training whatsoever. When Plaintiff raised this concern as unfair, Ms. Green arranged a two-day "training session" conducted by a fellow employee, Atef Boules, whose command of English is severely limited — a wholly inadequate substitute for proper professional training. No similar criticism or failure to train was imposed upon female or non-American members of the work group. Plaintiff has repeatedly expressed concern about his difficulty understanding Mr. Boules due to communication barriers, but neither Ms. Green nor the Company has made any effort to address these difficulties.

20. **Public Berating and Belittling.** Ms. Green has, on multiple occasions and in a caustic manner, berated, belittled, embarrassed, and demeaned Plaintiff in front of his colleagues during team meetings and conference calls, thereby undermining his professional standing and reputation. Ms. Green has not directed comparable abusive conduct at any female or non-American member of the work group.

21. **Mathematically Impossible Performance Goals.** Ms. Green established performance goals for Plaintiff that are literally and mathematically unachievable. By way of example, Ms. Green required Plaintiff to accept eight projects per week, even though only six projects existed in total, rendering full compliance mathematically impossible. Ms. Green thereafter criticized and berated Plaintiff for failing to meet these unattainable goals.

22. **Demeaning Treatment Distinguished from Treatment of Others.** Ms. Green consistently treats Plaintiff in a demeaning manner and tone that she does not employ with female or non-American members of the work group. She is openly hostile toward Plaintiff and seeks to intimidate him at every opportunity in a public setting.

**D.    Protected Activity and Retaliation**

23. Plaintiff lodged a formal complaint with Northrop Grumman's Human Resources Department regarding Ms. Green's discriminatory and hostile conduct. This complaint constituted protected activity within the meaning of Title VII, 42 U.S.C. § 2000e-3(a), and Fla. Stat. § 760.10(7).

24. Following Plaintiff's HR complaint, Ms. Green intensified her monitoring of Plaintiff's work and increased the frequency and severity of her retaliatory conduct, including regular one-on-one calls during which she continued to criticize and belittle Plaintiff in an effort to cause emotional distress and to construct a pretextual record to justify adverse action against him.

25. On February 25, 2026, Ms. Green placed Plaintiff on a thirty (30)-day Performance Improvement Plan ("PIP"). The PIP was issued directly after Plaintiff's HR complaint. The milestones and performance standards set forth in the PIP are so subjective as to be inherently unachievable and are plainly designed not to improve Plaintiff's performance, but to manufacture a pretext for the termination of his employment.

### E.    Damages to Professional Reputation

26. Ms. Green's false accusation of timesheet fraud, combined with her campaign of belittlement, pretextual negative evaluations, and her placement of Plaintiff on a retaliatory PIP, has damaged Plaintiff's professional reputation both within Northrop Grumman and in his broader professional life as a licensed attorney in good standing in twenty-four states and several federal courts. The false accusation of fraud, in particular, imputes criminal or fraudulent conduct to Plaintiff, and such a false accusation constitutes defamation *per se* under Florida law, with the natural tendency to damage Plaintiff's standing as a lawyer and officer of multiple courts.

### F. Wrongful Termination of Plaintiff's Employment

27. On May 6, 2026, Northrop Grumman terminated Plaintiff's employment, effective immediately, via a telephone call. The termination occurred on the same day Plaintiff returned from a scheduled, pre-approved vacation.

28. The termination followed directly upon Plaintiff's filing of a formal Charge of Discrimination and Retaliation with the EEOC on April 10, 2026, and the EEOC's issuance of a Notice of Right to Sue on April 21, 2026. The

termination was carried out approximately twenty-six (26) days after the issuance of the Right to Sue Notice and less than four (4) weeks after Plaintiff initiated formal agency proceedings. The filing of a charge of discrimination with the EEOC and participation in the resulting proceeding constitute protected activity within the meaning of 42 U.S.C. § 2000e-3(a), which prohibits retaliation for activity occurring in conjunction with or after the filing of a formal charge with the EEOC.

29. At the time of termination, Ms. Green herself acknowledged that Plaintiff's performance had improved during the thirty (30)-day PIP. Despite this acknowledgment, the Company proceeded to terminate Plaintiff's employment on the stated grounds that his improvement was insufficient to warrant retention. This rationale is internally inconsistent, pretextual on its face, and belied by Ms. Green's own concession of improvement. The use of an acknowledged improvement as the stated basis for termination is additional evidence that the employer gave inconsistent reasons for termination, supporting an inference of retaliatory motive.

30. Northrop Grumman offered no advance notice of the termination despite Plaintiff's nearly ten (10) years of continuous, predominantly satisfactory service with the Company. Plaintiff's health insurance benefits were cancelled effective the same day as his termination, without any transition period, compounding the immediate and severe harm inflicted on Plaintiff.

31. Northrop Grumman's termination of Plaintiff constitutes an adverse discriminatory employment action, representing the ultimate culmination of the sustained campaign of disparate treatment on the basis of Plaintiff's sex, race, and national origin described in paragraphs 13 through 32 above.

32. Ms. Green, as Plaintiff's direct supervisor and the individual responsible for the PIP and performance determinations that served as the stated basis for termination, was a direct and proximate cause of Plaintiff's termination. Her participation in, and advocacy for, Plaintiff's termination was motivated by discriminatory animus and retaliatory intent and constituted tortious interference with Plaintiff's employment relationship and additional outrageous conduct for purposes of the state law claims asserted herein.

## CAUSES OF ACTION

## COUNT I

### Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as Amended
*(Against Defendant Northrop Grumman Corporation Only)*

33. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth herein.

34. Northrop Grumman, through the acts of Ms. Green, has subjected Plaintiff to disparate treatment in the terms, conditions, and privileges of his employment on account of his sex (male), in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

35. As a direct and proximate result of this unlawful conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to harm to his professional reputation, emotional distress, lost benefits and opportunities, and other compensatory damages.

## COUNT II

### Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as Amended
*(Against Defendant Northrop Grumman Corporation Only)*

36. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth herein.

37. Northrop Grumman, through the acts of Ms. Green, has subjected Plaintiff to disparate treatment in the terms, conditions, and privileges of his employment on account of his race (Caucasian/White), in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

38. As a direct and proximate result of this unlawful conduct, Plaintiff has suffered and continues to suffer damages as described above.

## COUNT III

### National Origin Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as Amended
*(Against Defendant Northrop Grumman Corporation Only)*

39. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth herein.

40. Northrop Grumman, through the acts of Ms. Green, has subjected Plaintiff to disparate treatment in the terms, conditions, and privileges of his

employment on account of his national origin (native-born American citizen), in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

41. As a direct and proximate result of this unlawful conduct, Plaintiff has suffered and continues to suffer damages as described above.

## COUNT IV

### Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964, as Amended
*(Against Defendant Northrop Grumman Corporation Only)*

42. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth herein.

43. Northrop Grumman, through Ms. Green's sustained course of discriminatory, demeaning, and harassing conduct directed at Plaintiff on account of his sex, race, and national origin, has created and maintained a hostile and abusive work environment severe and pervasive enough to alter the conditions of Plaintiff's employment, in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

44. Ms. Green is Plaintiff's direct supervisor and is empowered by Northrop Grumman to take tangible employment actions against Plaintiff, including the placement of Plaintiff on a performance improvement plan. Northrop

Grumman is therefore subject to vicarious liability for the hostile work environment created by Ms. Green.

45. As a direct and proximate result of this unlawful conduct, Plaintiff has suffered and continues to suffer damages as described above.

## COUNT V

### Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as Amended
*(Against Defendant Northrop Grumman Corporation Only)*

46. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth herein.

47. Plaintiff engaged in activity protected under Title VII, 42 U.S.C. § 2000e-3(a), by complaining to Northrop Grumman's Human Resources Department about Ms. Green's discriminatory and hostile conduct.

48. After Plaintiff engaged in this protected activity, Northrop Grumman, through Ms. Green, retaliated against Plaintiff by intensifying monitoring of his work, escalating abusive conduct, and placing Plaintiff on a retaliatory thirty (30)-day Performance Improvement Plan on February 25, 2026. The temporal proximity between Plaintiff's protected complaint and the imposition of the PIP is compelling evidence of retaliatory intent.

49. These retaliatory actions constituted materially adverse employment actions sufficient to dissuade a reasonable worker from making or supporting a charge of discrimination.

50. As a direct and proximate result of this unlawful retaliation, Plaintiff has suffered and continues to suffer damages as described above.

## COUNT VI

### Sex, Race, and National Origin Discrimination in Violation of the Florida Civil Rights Act of 1992
*(Against Defendant Northrop Grumman Corporation Only)*

51. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth herein.

52. The Florida Civil Rights Act of 1992 secures for all individuals within the state freedom from discrimination because of race, color, religion, sex, national origin, age, handicap, or marital status.

53. Northrop Grumman, through the acts of Ms. Green, has subjected Plaintiff to unlawful discrimination in the terms, conditions, and privileges of his employment on account of his sex (male), race (Caucasian/White), and national origin (native-born American citizen), in violation of Fla. Stat. § 760.10(1)(a).

54. As a direct and proximate result of this unlawful conduct, Plaintiff has suffered and continues to suffer damages as described above.

## COUNT VII

**Hostile Work Environment in Violation of the Florida Civil Rights Act of 1992**
*(Against Defendant Northrop Grumman Corporation Only)*

55. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth herein.

56. Northrop Grumman, through Ms. Green's sustained and severe course of harassing conduct directed at Plaintiff on account of his sex, race, and national origin, has created and maintained a hostile and abusive work environment in violation of Fla. Stat. § 760.10(1)(a).

57. As a direct and proximate result of this unlawful conduct, Plaintiff has suffered and continues to suffer damages as described above.

## COUNT VIII

### Retaliation in Violation of the Florida Civil Rights Act of 1992
*(Against Defendant Northrop Grumman Corporation Only)*

58. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth herein.

59. Plaintiff engaged in activity protected under Fla. Stat. § 760.10(7) by complaining to Northrop Grumman's Human Resources Department about Ms. Green's discriminatory conduct. Defendant, through Ms. Green, thereafter, retaliated against Plaintiff by intensifying his supervision, escalating abusive conduct, and placing him on a pretextual Performance Improvement Plan on February 25, 2026, all in violation of Fla. Stat. § 760.10(7).

60. As a direct and proximate result of this unlawful retaliation, Plaintiff has suffered and continues to suffer damages as described above.

## COUNT IX

### Defamation Per Se
*(Against Defendant Natalie Green Only)*

61. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth herein.

62. Defendant Green made false statements of fact to agents, officers, and/or employees of Northrop Grumman Corporation — including personnel in the Company's human resources and managerial functions — accusing Plaintiff of having submitted fabricated and fraudulent timesheets during a hurricane emergency.

63. These statements were knowingly false. Plaintiff had been forced to evacuate his home due to life-threatening flooding, was physically unable to be present at his Tampa office. He performed his job duties remotely from hotel accommodations during the relevant period. Ms. Green knew these facts or acted in reckless disregard of their truth or falsity.

64. Ms. Green communicated these false accusations of fraud to third parties within Northrop Grumman, constituting publication.

65. The false accusation is particularly harmful to Plaintiff as a licensed attorney in good standing in twenty-one states, as an accusation of fraudulent

conduct bears directly on his fitness as a lawyer and officer of the courts in which he is admitted.

66. As a direct and proximate result of Defendant Green's defamatory statements, Plaintiff has suffered injury to his professional and personal reputation, emotional distress, and other damages in an amount to be determined at trial. Because Ms. Green's conduct was intentional and malicious, Plaintiff is entitled to punitive damages.

## COUNT X

**Tortious Interference with Advantageous Business and Professional Relations**
*(Against Defendant Natalie Green Only)*

67. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth herein.

68. Plaintiff has existing and prospective advantageous business relationships with Northrop Grumman Corporation with respect to his employment and career development, as well as with prospective clients and professional contacts who may engage him in his capacity as a licensed attorney.

69. Defendant Green knew of these relationships, including Plaintiff's employment relationship with Northrop Grumman and his standing as a licensed attorney in twenty-four jurisdictions.

70. Defendant Green intentionally and unjustifiably interfered with these relationships through the following tortious acts: (a) falsely accusing Plaintiff of timesheet fraud; (b) issuing unwarranted, pretextual negative performance evaluations; (c) setting mathematically unachievable performance goals to manufacture a basis for termination; (d) publicly demeaning and humiliating Plaintiff in front of colleagues; and (e) placing Plaintiff on a retaliatory Performance Improvement Plan designed to facilitate termination of his employment.

71. Defendant Green's interference was not justified and was not the result of legitimate business judgment; it was motivated by discriminatory animus and personal malice toward Plaintiff on the basis of his sex, race, and national origin.

72. As a direct and proximate result of Ms. Green's tortious interference, Plaintiff has suffered and continues to suffer harm to his employment

relationship, career advancement, professional standing, and reputation, in an amount to be determined at trial.

## COUNT XI

### Intentional Infliction of Emotional Distress
*(Against Defendant Natalie Green Only)*

73. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth herein.

74. Defendant Green engaged in a sustained, deliberate, and escalating campaign of outrageous conduct directed at Plaintiff, including: (a) falsely accusing him of federal-level fraud to his employer; (b) publicly and repeatedly berating and demeaning him before his colleagues; (c) imposing literally impossible performance goals and then attacking him for failing to meet them; (d) denying him adequate training to set up a pretextual basis for adverse action; and (e) intensifying this conduct after he engaged in protected activity, in a deliberate effort to manufacture grounds for his termination and cause him maximum emotional distress.

75. Ms. Green's conduct, taken in its totality, goes beyond all bounds of decency and is of a type that no reasonable person should be expected to endure.

76. Ms. Green's conduct was deliberate and intentional, or at minimum reckless with regard to its effect on Plaintiff.

77. As a direct and proximate result of Ms. Green's outrageous conduct, Plaintiff has suffered and continues to suffer severe emotional distress, anxiety, humiliation, reputational harm, and related damages in an amount to be determined at trial. Plaintiff is entitled to punitive damages due to the intentional and malicious nature of Defendant's conduct.

## COUNT XII
**Retaliatory Termination in Violation of Title VII of the Civil Rights Act of 1964, as Amended**
(*Against Defendant Northrop Grumman Corporation Only*)

78. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth herein.

79. Plaintiff engaged in activity protected under the participation clause of Title VII, 42 U.S.C. § 2000e-3(a), by filing a formal Charge of Discrimination and Retaliation with the EEOC on April 10, 2026, and by participating in the resulting administrative proceeding.

80. On May 6, 2026 — approximately twenty-six (26) days after Plaintiff filed his EEOC Charge and approximately fifteen (15) days after the EEOC issued its Notice of Right to Sue — Northrop Grumman terminated Plaintiff's

employment, effective immediately, without advance notice. The termination was carried out by telephone on the day Plaintiff returned from a pre-approved scheduled vacation. Plaintiff's employment benefits, including health insurance, were cancelled on the same day.

81. Northrop Grumman's articulated reason for the termination — that Plaintiff's performance during the PIP had improved but not sufficiently — is pretextual. Ms. Green herself acknowledged that Plaintiff's performance had improved during the PIP period. The Company's decision to terminate based on acknowledged improvement is internally inconsistent and is belied by the record.

82. The termination of Plaintiff's employment constitutes a materially adverse employment action, and a retaliation claim under Title VII which makes it illegal for an employer to retaliate against an employee who files a Title VII complaint with the EEOC or participates in a Title VII investigation of discrimination.

83. As a direct and proximate result of this unlawful retaliatory termination, Plaintiff has suffered and continues to suffer damages, including loss of wages, back pay, front pay, loss of benefits (including immediate

cancellation of health insurance), harm to his professional reputation, emotional distress, and all other compensatory damages. Because Northrop Grumman's conduct was undertaken with malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a.

## COUNT XIII
### Retaliatory Termination in Violation of the Florida Civil Rights Act of 1992
*(Against Defendant Northrop Grumman Corporation Only)*

84. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth herein.

85. Plaintiff engaged in activity protected under Fla. Stat. § 760.10(7) by filing a Charge of Discrimination with the EEOC and the Florida Commission on Human Relations, and by participating in the resulting administrative proceedings.

86. On May 6, 2026, Defendant Northrop Grumman terminated Plaintiff's employment immediately upon his return from a scheduled vacation, offering no advance warning and cancelling his health insurance benefits the same day. The termination followed Plaintiff's EEOC charge by twenty-six days and the issuance of his right-to-sue notice by fifteen days.

87. Northrop Grumman's stated justification for the termination — that Plaintiff's PIP performance improvement was insufficient — is pretextual. Ms. Green's concurrent acknowledgment of improvement fatally undermines the Company's stated rationale. The Florida Civil Rights Act makes it an unlawful employment practice to discharge any individual, or otherwise to discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment, including retaliatory discharge following protected EEOC activity.

88. The termination constitutes an unlawful retaliatory discharge in violation of Fla. Stat. § 760.10(7).

89. As a direct and proximate result of this unlawful retaliatory termination, Plaintiff has suffered and continues to suffer damages as described in Count XII above, including loss of wages, loss of benefits, emotional distress, and reputational harm. Plaintiff is entitled to compensatory damages, punitive damages, and attorneys' fees pursuant to Fla. Stat. § 760.11.

## COUNT XIV
### Discriminatory Termination in Violation of Title VII of the Civil Rights Act of 1964, as Amended — Sex, Race, and National Origin
*(Against Defendant Northrop Grumman Corporation Only)*

90. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth herein.

91. The termination of Plaintiff's employment on May 6, 2026, constitutes an adverse employment action taken on account of his sex (male), race (Caucasian/White), and national origin (native-born American citizen), in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1). The termination represents the ultimate manifestation of the sustained pattern of discriminatory treatment directed at Plaintiff by Ms. Green as described herein.

92. Plaintiff was the only member of the work group — and the only native-born white American male — subjected to mathematically impossible performance goals, pretextual negative evaluations, a retaliatory PIP, and ultimately termination. No comparable adverse action was taken against any female or non-American member of the work group.

93. Northrop Grumman's stated justification for the termination is pretextual for the reasons set forth above. The use of a subjective, supervisor-controlled PIP process — administered by the very supervisor who fabricated

performance deficiencies and harbored discriminatory animus — as the vehicle for termination further demonstrates that the stated reason is a pretext for discrimination.

94. As a direct and proximate result of this unlawful discriminatory termination, Plaintiff has suffered and continues to suffer damages including loss of wages, loss of benefits, harm to his professional reputation, emotional distress, and all other compensatory and punitive damages available under Title VII and the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

## COUNT XV
**Discriminatory Termination in Violation of the Florida Civil Rights Act of 1992**
*(Against Defendant Northrop Grumman Corporation Only)*

95. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth herein.

96. Northrop Grumman's termination of Plaintiff's employment on May 6, 2026, constitutes an unlawful discriminatory discharge on the basis of Plaintiff's sex, race, and national origin, in violation of Fla. Stat. § 760.10(1)(a). The analysis and supporting allegations set forth in Count XIV are incorporated herein by reference.

97. As a direct and proximate result of this unlawful conduct, Plaintiff has suffered and continues to suffer damages as described above, including loss of wages, loss of benefits, emotional distress, and reputational harm. Plaintiff is entitled to compensatory damages, punitive damages, and attorneys' fees pursuant to Fla. Stat. § 760.11.

## COUNT XVI
### Tortious Interference with Advantageous Business and Professional Relations — Wrongful Termination
*(Against Defendant Natalie Green Only)*

98. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth herein.

99. On May 6, 2026, Northrop Grumman terminated Plaintiff's employment. Ms. Green, as Plaintiff's direct supervisor, was the proximate cause of that termination. She did so by: (a) designing and administering the pretextual PIP with subjective, unachievable standards; (b) providing the performance assessment forming the stated basis for the termination decision; (c) acknowledging improvement during the PIP while nonetheless advocating for or acquiescing in Plaintiff's termination; and (d) doing so in furtherance of the campaign of discriminatory and retaliatory conduct described herein.

100.    Ms. Green's conduct in procuring Plaintiff's termination was unjustified, was not the product of legitimate business judgment, and was motivated by discriminatory animus and retaliatory intent toward Plaintiff on account of his sex, race, and national origin, as well as in retaliation for his protected EEOC activity.

101.    As a direct and proximate result of Ms. Green's tortious interference in procuring Plaintiff's termination, Plaintiff has suffered the complete destruction of his employment relationship with Northrop Grumman, the loss of wages, benefits, career advancement opportunities, and reputational harm in his capacities as both a corporate accountant and a licensed attorney. These damages are in an amount to be determined at trial. Because Ms. Green's conduct was intentional and malicious, Plaintiff is entitled to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Alexander James Coffin respectfully requests that this Court enter judgment in his favor and against Defendants Northrop Grumman Corporation and Natalie Green, and grant the following relief:

**As to Defendant Northrop Grumman Corporation (Counts I–VIII):**

A. A declaratory judgment that Northrop Grumman's acts and practices complained of herein violate Title VII of the Civil Rights Act of 1964, as amended, and the Florida Civil Rights Act of 1992;

B. A permanent injunction directing Northrop Grumman to cease and desist all discriminatory, harassing, and retaliatory conduct against Plaintiff;

C. An order directing Northrop Grumman to remove the February 25, 2026 Performance Improvement Plan from Plaintiff's personnel file and records;

D. An order directing Northrop Grumman to implement adequate non-discrimination, anti-harassment, and anti-retaliation policies and training;

E. An award of back pay, front pay, and all other compensation and benefits lost as a result of Northrop Grumman's unlawful conduct;

F. An award of compensatory damages for emotional distress, reputational harm, and other non-economic losses;

G. An award of punitive damages pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and Fla. Stat. § 760.11, for Northrop Grumman's malicious or reckless disregard of Plaintiff's federally protected rights;

H. An order directing Northrop Grumman to reinstate Plaintiff to his former position with full seniority and benefits, or, in the alternative, an award of front pay in lieu of reinstatement;

I. An award of all wages, salary, benefits (including the value of health insurance coverage cancelled on May 6, 2026), and other compensation lost as a result of Plaintiff's wrongful termination;

J. An award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k) and Fla. Stat. § 760.11(5); and

K. Such other and further relief as this Court deems just and proper.

**As to Defendant Natalie Green (Counts IX–XI):**

L. An award of compensatory damages for injury to professional and personal reputation, emotional distress, lost career opportunities, and all other actual damages proximately caused by Ms. Green's tortious conduct;

M. An award of punitive damages for Ms. Green's intentional, malicious, and outrageous conduct;

N. An award of compensatory and punitive damages for Ms. Green's tortious interference in procuring the termination of Plaintiff's employment as set forth in Count XVI;

and

O. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: June _____ 25 _____, 2026

Respectfully submitted,


Alexander James Coffin

Florida Bar No. 1074642
*Pro Se Plaintiff*

Law Office of Alex Coffin, LLC
409 W. Davis Boulevard
Tampa, Florida 33606-3649
Telephone: 443-223-7669
Email: Alex.COFFINLAW@gmail.com